The **PEOPLE** of the State of Colorado, Plaintiff–Appellee,

v.

Lucio **MUNOZ**, Defendant–Appellant.

No. 99CA0123.

Colorado Court of Appeals, Div. I.

April 27, 2000.

Certiorari Granted Sept. 18, 2000.

Ken Salazar, Attorney General, Katherine A. Hansen, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

David F. Vela, Colorado State Public Defender, Cynthia Camp, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge RULAND.

Defendant, Lucio Munoz, appeals from the trial court's order denying his Crim. P. 35(c) motion for post-conviction relief. We affirm and remand for correction of the mittimus.

Defendant was charged originally with first degree criminal trespass and conspiracy to commit theft. Pursuant to a plea agreement, defendant pled guilty to theft, a class four felony. Section 18–4–401(2)(c), C.R.S. 1999. The parties' written sentencing agreement provided as follows:

> That sentencing shall be open to the court; however, if an initial sentence to the Department of Corrections is imposed, the parties agree to a cap of nine (9) years. The parties further agree that this sentence shall run concurrently with the sentence imposed in Weld County.

At the providency hearing, the trial court correctly advised defendant that he was subject to mandatory aggravated range sentencing:

> Now, this is a felony charge.... If the judge found that the case had extraordinary aggravation about it or that the person was in what they call the aggravated-sentencing range or the enhanced range for any reason ... then it could be as much as twelve years.

Thus, defendant was informed that in the absence of the sentence agreement, the maximum possible sentence would ·be 12 years.

With reference to the plea agreement, the court stated:

> Now, what the attorneys are telling me is that you are going to plead guilty to a felony charge of theft. You have been promised that the sentence—it would be up to the Court, up to the Judge, but the sentence would be *no more than nine years in prison* .... (emphasis in original)

Defendant indicated that he understood the court's advisement, and the court accepted his plea.

The court sentenced defendant to nine years in the Department of Corrections (DOC) to be served concurrent with another sentence. However, the trial court neglected to note on the mittimus that defendant would also be subject to a three-year period of mandatory parole pursuant to § 18–1–105(1)(a)(V)(A), C.R.S.1999.

Later, defendant filed this *pro se* Crim. P. 35 motion alleging that requiring him to serve a three-year period of mandatory parole in addition to a nine-year DOC sentence violated the sentence agreement. As relief, defendant asked the court to modify his sentence so that the total of his DOC sentence and his mandatory parole period did not exceed nine years.

The trial court denied defendant's motion without conducting an evidentiary hearing or granting his request for appointment of counsel. This appeal followed.

■ Defendant's Crim. P. 35(c) motion was based on *People v. Sandoval,* 809 P.2d 1058 (Colo.App.1990). However, while defendant's appeal was pending, the supreme court overruled *Sandoval* in *Craig v. People,* 986 P.2d 951 (Colo.1999). The court held that cases involving post-conviction challenges to mandatory parole require a two-part inquiry.

■ First, the appellate court must independently review the parties' plea agreement. In this review, we must determine objectively whether the defendant was promised a sentence related to mandatory parole that was statutorily prohibited. In making this determination, pursuant to *Craig,* we interpret stipulations for "Department of Corrections" sentences as referring only to the imprisonment component of a sentence and not as including any promise concerning mandatory parole. *See also People v. Snare,* 7 P.3d 1025 (Colo.App. 1999).

Under the second prong of the *Craig* analysis, the appellate court must determine whether the defendant was properly advised

that he or she would be subject to a period of mandatory parole. In addition, defendant should be informed of the maximum possible length of that parole period, and the fact that mandatory parole is a consequence distinct from imprisonment.

■ Here, as to the first prong, the parties' only sentence stipulation was for a nine-year "Department of Corrections" sentence cap. Thus, we conclude that there was no stipulation with respect to the mandatory parole period. Accordingly, we conclude that the agreement is not invalid under *Craig*.

■ With respect to the second prong of the Craig analysis, we conclude that the court's advisement was deficient because the record fails to indicate that defendant was informed of mandatory parole in any manner. However, in *Craig*, our supreme court also stated:

> [I]n cases where the defendant is alerted as to the full range of penalties to which he could legitimately be exposed, but is not apprised of the consequence of mandatory parole, harmless error results when the term of imprisonment, combined with the mandatory period of parole, falls within the range of sentence that the defendant was at risk of receiving.

> While the failure to advise a defendant of both the fact and length of mandatory parole constitutes error ..., a defendant, having been notified of the maximum available penalties, is not entitled to reformation of a combined sentence of imprisonment and mandatory parole that falls within the range of penalties he was at risk of receiving.

*Craig v. People, supra*, 986 P.2d at 964; *see also People v. Tyus*, 776 P.2d 1143 (Colo.App. 1989).

Consistent with that discussion, in *People v. Priester*, 996 P.2d 766 (Colo.App.2000), a division of this court held that a trial court's advisement that does not specify the length of the mandatory parole period may constitute harmless error. That is, the error is harmless if the total of defendant's stipulated sentence and the mandatory parole period is less than the maximum sentence that defendant was advised he was "at risk of receiving." As noted in *Priester*:

When the supreme court discussed the sentence which the defendant "risked receiving," it referred to the maximum sentence which the defendant was advised he could receive before entering into a plea bargain.

*People v. Priester, supra*, 996 P.2d at 770.

Consistent with *Craig* and *Priester*, we conclude that the trial court's failure to advise defendant of mandatory parole in any manner was harmless error. This is because the total amount of the stipulated sentence and the mandatory parole period (12 years) is equal to the maximum sentence defendant was advised he was at risk of receiving without a sentence stipulation. *People v. Priester, supra*.

Thus, we affirm the trial court's order summarily denying defendant's motion. *See People v. Brack*, 796 P.2d 49 (Colo.App.1990) (under Crim. P. 35(c), a court need not hold an evidentiary hearing if the motion, the files, and the record of the case clearly establish that the allegations are without merit); *People v. Hickey*, 914 P.2d 377 (Colo.App. 1995) (limited statutory right to counsel in post-conviction proceedings exists only where allegations are factually sufficient to warrant a hearing).

Based upon our disposition of the above issues, it is unnecessary to address the prosecution's argument concerning a remand to the trial court.

Finally, we reject defendant's double jeopardy argument for the reasons set forth in *People v. Mayes*, 981 P.2d 1106 (Colo.App. 1999). We remand the cause to the trial court with directions to correct the mittimus so that it accurately indicates that defendant is subject to a three-year period of mandatory parole pursuant to § 18–1–105(1)(a)(V)(A), C.R.S.1999. *Craig v. People, supra*.

The order is affirmed, and the cause is remanded with directions to correct the mittimus.

Judge METZGER and Judge NIETO concur.